## THE CITY OF ROCKFORD

*v.*

## DANIEL W. MEAD.

*Opinion filed February 17, 1904.*

CONTRACTS—*contract cannot be binding in part, only.* In the absence of anything indicating an intention to limit the acceptance by a city of a written proposition for the construction of a public improvement, the contract, which is made in accordance with the terms of such proposal, is binding in its entirety.

*City of Rockford* v. *Mead*, 106 Ill. App. 278, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. CHARLES E. FULLER, Judge, presiding.

C. O. CARBAUGH, A. E. FISHER, and C. W. FERGUSON, for appellant.

E. P. LATHROP, and R. K. WELSH, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is a suit in assumpsit, brought by Daniel W. Mead against the city of Rockford, in the circuit court of Winnebago county, Illinois.

The record discloses the following state of facts: Prior to January 18, 1897, appellee, Daniel W. Mead, submitted to the city of Rockford a written proposition to increase the water supply of the city. This proposition included the sinking of a shaft, the construction of tunnels, the furnishing of pumps and engines, and all mechanical appliances to take the water from wells or tunnels and deliver it to a pumping pit or reservoir, and the construction of a suitable building to protect the shaft and machinery. On the date named the city entered into an agreement with appellee in accordance with the terms of said written proposition, a copy of which proposition was incorporated in and made a part of the con-

tract. By the provisions of the contract the appellee agreed that he would do the necessary work and supply materials and machinery for the development and delivery into the present pumping pit or reservoir of the city, of a supply of artesian water amounting to five and one-half million gallons per day; that to do this he would sink a vertical shaft into the stratum of clay below the sand and gravel deposits, to be connected with the various artesian wells existing and such additional wells as appellee might sink to obtain the guaranteed amount of water; that at or near the base of the shaft he would erect three pumps, each of a capacity of three million gallons in twenty-four hours, or two pumps, each of a capacity of six million gallons in twenty-four hours, to be operated by engines at the surface; that there should be three engines, each connected with and capable of operating one of the pumps, or two engines, each arranged for and capable of operating any two of the pumps, or if only two six-million-gallon pumps were furnished, then there should be two engines, each arranged for and capable of operating one of said pumps; that the contract was made on the guaranty that appellee should furnish a system of water supply having a capacity of five and one-half million gallons per day of twenty-four hours, and that the machinery should be capable of raising six million gallons per day into the pumping pit or reservoir at the city water-works; that upon the completion of the contract and fulfillment of the guaranty the city should pay appellee the sum of $22,000, and should thereafter pay him, in addition, the sum of $8000 for the shaft, tunnels and building; that upon the completion of the contract the same should be construed and regarded as a lease between the parties for two years, for the use of the engine, pumps, machinery and fittings of all kinds furnished by appellee for the operation of the pumping plant, and payment was provided to be made therefor, the price paid for rental to be applied on the

purchase price upon terms stated in the contract; that the title and ownership of said engines, pumps and machinery, and all fittings of all kinds provided by appellee for said shaft and building, should be and remain in said appellee until the same should be purchased by the party of the first part, and until payment in full by it of all sums, and interest thereon, payable, or which should become payable, to appellee under the contract.   Thereafter said parties entered into a supplemental contract providing for connecting the shaft above mentioned with another well of the city, and they later entered into another contract providing for sinking a new well and connecting the same with the shaft in question, instead of making the connection contemplated in the first supplemental contract. The original and supplemental contracts also provided for certain extra sums or bonuses to be paid under certain conditions, the most important of which was to accrue to appellee in case the supply of water furnished by him should equal or exceed seven million gallons per day, pumped from all the wells.

Appellee installed the system of water-works as proposed by the agreement, placed at the bottom of the shaft three pumps guaranteed to have a capacity of at least three million gallons for twenty-four hours, and furnished three engines capable of operating same. Upon a test of the pumps and engines it was shown that each of the pumps had a capacity of six million gallons in twenty-four hours.   Soon after appellee learned the capacity of the pumps, and before final payment was made by the city, and while the plant was still in the custody of the appellee, he notified the mayor that each of said pumps had six million gallons capacity and that he proposed to remove one of the engines and pumps from the plant, but the mayor refused to permit the same to be removed. Afterwards appellee laid the claim before the mayor, the water-works committee and the superintendent of water-works, and a proposition of settlement was ·

made to the city council but no settlement was arrived at. The city made all the payments provided for by the contract, but refused to surrender the pump and engine in question or to pay any additional amount for the same, as demanded by appellee, and this suit was brought to recover the value thereof. Appellee filed a special count upon the contract between the parties, and the common count. There was a plea of the general issue. The trial resulted in verdict and judgment for appellee for $6000. The city appealed to the Appellate Court, where the judgment was affirmed, and the present appeal is prosecuted.

Appellant insists there was error in the giving of instructions and the admission of certain evidence. The instructions complained of are the third, fifth, sixth, seventh and eighth given at the request of appellee. These instructions told the jury that appellee, under the contract and lease between him and appellant, had the option to furnish and deliver to the appellant city either three three-million-gallon pumps and engines or two six-million-gallon pumps and engines, and that two pumps of six million gallons each, connected with two engines of sufficient capacity to operate said pumps, would fulfill that part of appellee's contract. By these instructions the court was placing a construction upon the contract between the parties. Appellant claims they are erroneous, for the reason that, although such was the legal effect of the proposition as made by appellee to appellant, appellant refused to adopt that part of appellee's proposition, and provided for suitable pumps and engines for the delivery into the pumping pit of seven million gallons per day, such machinery to be of a certain efficiency and test. Appellant, in its brief, speaking of the instructions complained of, says: "If that part of the proposition of appellee which provided for the furnishing of three three-million-gallon pumps and engines or two six-million-gallon pumps and engines is the contract between appellant and appellee, then, as to that feature, the

court construed the contract aright." Appellant admits
that the supplemental contract deals only with the in-
crease of the water supply, and not with the capacity of
pumps and machinery, and that by the express· provi-
sions of the supplemental contract it was in no way to
affect the other provisions of the original contract.

The contract between appellant and appellee was
made after and founded upon a proposition in writing
made by appellee to appellant, and comprising six type-
written pages of the record, and which is embodied liter-
ally and *in extenso* in the contract. The first clause of
the contract states the parties and date, followed by a
statement of the desire of appellant to increase its water
supply, and that "said Mead has heretofore submitted to
said city a detailed proposition, in writing, for doing the
necessary work and supplying materials and machinery
for the development and delivery into the present pump-
ing pit or reservoir of said city of a supply of a capacity
of not less than five and one-half millon gallons of ar-
tesian water per day of twenty-four hours." The third
paragraph reads: "And said city has accepted the said
proposition of the said party of the second part for the
construction of the necessary shaft, tunnel and building
mentioned in said second party's proposition, a copy of
which said proposition is hereinafter set forth and made
a part of this contract." The fourth paragraph is: "And
said Mead proposes to provide proper engines, pumps
and machinery to equip and operate the shaft and tun-
nel system proposed to be constructed by him, and shall,
and will, lease such machinery and pumps to said first
party for the time and upon the rental herein set forth."
Then follows the proposition as made by appellee, with
the preface: "The proposition of said Mead to said city,
showing the detail of construction, is as follows."

The first paragraph of the proposal states, in a gen-
eral way, the work to be done, and the second paragraph
is as follows: "The general features of the works shall

consist of a vertical shaft into the stratum of clay which lies below the sand and gravel deposits at the present pumping works. From the bottom of this shaft one or more tunnels will be excavated to such of the present wells as the contractor may desire to utilize and to such additional wells as he may sink to obtain the guaranteed amount of water. At or near the base of the shaft shall be erected three pumps, each of a capacity of three million gallons per twenty-four hours, or two pumps, each of a capacity of six million gallons per twenty-four hours. These pumps shall be operated by engines located at the surface, and shall be arranged to discharge into the pumping pit and into the reservoir, as desired. A suitable building will be provided to protect the shaft and machinery, and all necessary connections will be made with the present buildings, and everything done to complete a good, substantial and economical plant."

In the proposal, under the head of "Machinery," it is said: "The machinery shall include the pumps, engines, and all mechanical appliances necessary to take the water from the wells or tunnels and deliver it to the pumping pit or reservoir. * * * There shall be three engines, each connected with and capable of operating one of the pumps, or two engines, each arranged for and capable of operating any two of the pumps, or if only two six-million-gallon pumps are furnished, then there shall be furnished two engines, each arranged for and capable of operating one of said pumps, as is found most desirable *and as the contractor may elect."* There are no further particulars in the proposition in reference to the pumps and engines, and the only provision following the proposition, and contained in the contract based upon the proposition, relates to the capacity or power of the pumps, and is, in effect, that if the pumps shall develop more than sixty millions foot-pounds of duty, appellant shall, in addition to the stipulated price, pay $300 per million foot-pounds, up to seventy millions so developed.

· Having thus gone extensively into this contract, we are unable to agree with the contention of appellant that it did not accept the proposition of appellee in reference to the pumps and engines.    The doctrine is too familiar to require citation of authorities, that one cannot accept a proposition in part, but must accept it as a whole or reject it; and while this rule does not preclude parties from agreeing that a proposal shall only be accepted in part, the contract in question is so lacking in any specific declaration of the intention of the parties that the proposition of appellee should only be accepted in so far as it related to the sinking of the shaft and the production of the desired amount of water, that we are entirely satisfied with the construction placed upon it by the trial and Appellate Courts.    We think there was no error in giving the instructions complained of.

It is complained that appellee was permitted to detail a conversation had between him and the mayor at the time appellee announced to him the result of the test of the pumps and stated his (appellee's) intention to remove one of the pumps.    The reply particularly complained of, as detailed by the witness, was: "Mr. Brown [the mayor] said that he would not permit any engine to be removed, and if the engines were of that capacity he preferred the city should retain it and pay me what it was worth."    Of this it is said, that as the mayor had no authority to bind the city the testimony was incompetent.    In the view we have taken of this contract we cannot regard the admission of this evidence as reversible error, if it be deemed to be error at all.    The contract was in writing, and the remark of the mayor neither tended to enlarge nor change it to the benefit of appellee.    Besides, the mayor was allowed to testify in regard to the same conversation and gave quite a different version of it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*